# MORAN *v.* SULLIVAN.

———

## MORAN *v.* DALY.

———

CONTRACTS; DEEDS; FRAUD; EQUITY; PRACTICE.

1. A conveyance by an aged and infirm woman of valuable property to one holding confidential relations with her and having the opportunity for the exercise of undue influence, will be set aside by a court of equity, in the absence of clear and satisfactory proof of the fairness of the transaction; and the burden of proving its fairness is, in such a case, upon the beneficiary.

2. Where in a suit in equity to set aside a deed alleged to have been procured by fraud from an aged and infirm grantor, the court regards the testimony taken as an insufficient or unsatisfactory basis for a decision, the court will, for its information and guidance, although not requested by the parties to do so, direct issues to be formed for trial by jury upon evidence to be adduced by the parties, and upon the rendition of the verdict rehear the case upon the testimony taken, the verdict, and such further testimony as the court may desire.

Nos. 695 and 696. Submitted December 16, 1897. Decided January 5, 1898.

HEARING on appeals by the complainants from decrees dismissing two bills of complaint in suits to vacate deeds of real estate alleged to have been procured by fraud. *Reversed.*

The COURT in its opinion stated the case as follows:

These two cases, although argued together and proper to be considered together, have no necessary connection with each other. They depend, however, substantially upon the same conditions and circumstances; it was agreed that the testimony taken in the one should be used in the other; and while there are some features of difference in the two cases, which will be noted hereafter, it is proper that we should consider them together. Even the two bills of complaint contain substantially the same allegations. The purpose of both

suits is to vacate certain deeds of conveyance claimed to have been made by a person mentally incapable of making them and under undue influence practiced by the grantees in the deeds, and to a certain extent by collusion with each other.

On September 21, 1893, there was placed on record among the land records of the District of Columbia, a paper purporting to be a deed of conveyance from one Alice Moran to the appellee, James D. Daly, under date of August 26, 1893, whereby there was conveyed by the former to the latter lot of ground numbered eleven, in square numbered forty-two, in that part of the city of Washington formerly known as Georgetown, together with the house thereon and all the furniture and household effects contained therein, for the alleged consideration of $2,500. Four days afterwards, on September 25, 1893, there was placed on record another paper purporting to be a deed of conveyance from the same Alice Moran to the appellee, James Sullivan, and purporting to have been executed on the same day, September 25, 1893, whereby there was conveyed by Alice Moran to Sullivan, for the alleged consideration of $7,000, lot of ground designated as part of lot numbered fifteen, in square numbered five hundred and thirty-four, in the city of Washington, being the north 28 feet of the lot by a depth of 145 feet, with the improvements thereon, which, it seems, comprised a store or a place of business then under good rent.

It was claimed by the appellants, who are the grandchildren of said Alice Moran, that she was at the time an aged and very infirm person, and wholly incapable, mentally and physically, of executing a valid deed or contract; and accordingly the two bills were filed which are the basis of these proceedings. The bills were filed originally in her name by one of the present appellants, Michael V. Moran, as her next friend. But during the pendency of the proceedings, after the testimony was completed, as it would seem, but before the causes came on for hearing in the court below,

Alice Moran died; and the causes were revived by bills of revivor in the names of the appellants as her heirs at law.

It appears from the record that Alice Moran, a woman upwards of seventy-eight years of age at the time of the alleged execution of the deeds in question, and who had been a widow upwards of forty years, had resided for upwards of thirty years of that time and carried on the grocery and liquor business, whereby she had acquired some means, at No. 2805 M (or Bridge) street, in Georgetown, which is the same property purported to have been conveyed to the appellee Daly, by the deed above mentioned, of August 26, 1893; and she continued to reside there and nominally to carry on the business until the time of her death, which occurred on February 15, 1896. She had four children, two of whom had died many years before her without issue. One, a daughter Rosetta, who died in 1873, had intermarried with the appellee, James D. Daly, and had by him one child who survived her only a few months. The fourth child, a son, was the father of the appellants. He died in 1872; and the appellants, therefore, are now the only heirs at law of the deceased, Alice Moran.

Since the death of his wife Rosetta, the appellee Daly continued to reside in the house with his mother-in-law, as a member of her family, and so continued until her death. The grandchildren had made their home with their mother in the immediate neighborhood, or had acquired homes for themselves. The only other inmates of Mrs. Alice Moran's house were one or two domestics, and occasionally, as it would seem, one or two boarders.

In this condition of things the two bills in equity now before us were filed in the name of Mrs. Alice Moran, by one of her grandsons as her next friend, it being assumed that she was mentally incompetent to act for herself without some guardian or next friend. Both bills, as already intimated, set forth substantially the same facts, the gist of which was that Alice Moran, through physical and mental

imbecility, was incapable of making a valid deed or contract at the time at which the deeds in question purport to have been made, and that both deeds were procured by undue influence exercised upon her by the appellee Daly; and the bill against Sullivan further alleged that the conveyance to him had been procured by collusion and conspiracy on his part with Daly.

The defendants, Daly and Sullivan, denied the substantial allegations against them; and a large amount of testimony was taken. As already stated, after the conclusion of the testimony and before final hearing, Alice Moran died on February 15, 1896; and both suits were revived in the names of her grandchildren as her heirs at law. A paper purporting to be her last will and testament and to have been executed on March 25, 1893, was offered for probate, and after some contest over it in the Orphans' Court, was admitted to probate. This will devises the property described in the Sullivan deed to her daughter-in-law, Margaret Moran, in trust for the appellants, the grandchildren of the testatrix. In the Georgetown property, that mentioned in the Daly deed and wherein the testatrix resided, the will gave a life estate to Daly, and devised the remainder in the same way as the previously mentioned property. It gave Daly also the stock in trade and the business of the testatrix, the furniture and household effects in the house for his life, with remainder to such of her grandchildren as should survive him, and also all the rest and residue of her estate, which would seem to have included another piece of real estate in Georgetown; and it appointed one of her nephews and a friend to be her executors. This will was introduced into the present case by the appellee Daly as an exhibit to his answer to the bill of revivor; but it makes no further figure in the case; and it does not appear what the estate was that was left by the deceased Alice Moran.

Upon the hearing the court below dismissed both bills of

complaint; and from the decree of dismissal the complainants have appealed.

*Messrs. Padgett & Forrest* for the appellants:

1. A deed may be set aside for undue influence where relations of confidence exist between the parties and the deed is the result of an improper exercise of such relations. The relations may be of any kind implying confidence, such as nurse and invalid, confidential friend and adviser. Express proof of such influence need not be made, but will be implied from the known relations of the parties. *Bayliss* v. *Williams*, 6 Coldw. (Tenn.) 440; *Turner* v. *Turner*, 44 Mo. 535; *Green* v. *Green*, 9 Gratt. (Va.) 330; *Mellican* v. *Mellican*, 24 Tex. 426; *Corbett* v. *Corbett*, 7 Iowa, 60; *Fuller* v. *Fuller*, 49 Ala. 301; 2 Pomeroy's Eq., Secs. 955 *et seq.*

2. Where the confidential relationship between the parties and the weakness of mind of the grantor are shown, imposition or undue influence will be inferred, and it is not necessary to show by absolute evidence that this was exerted by the grantee at the time the deed was made. *Allore* v. *Jewell*, 94 U. S. 506; *Sears* v. *Shafer*, 2 Selden (N. Y.), 268; *Worrell's Appeal*, 110 Pa. St. 349; *Weller* v. *Weller*, 44 Hun (N. Y.), 172; *Harding* v. *Handy*, 11 Wheat. 103; *Towson* v. *Moore*, 11 App. D. C. 377.

3. Where a deed is never left for perusal, or prepared by the grantee, or the gift is exorbitant, or the grantee had not means of paying the price, or the grantee had by relationship obtained a commanding influence or the entire confidence of the grantor, which was used, or the consideration is grossly inadequate, or where a weak man has conveyed all his estate, leaving himself to be clothed and fed at the pleasure of the grantee, the weakness of mind with the other circumstances make up that amount of imposition and fraud which will avoid a deed. *Owen's Case*, 1 Bland. 373; *Highberger et al.* v. *Stiffler*, 21 Md. 338; *Clarkson* v. *Hanway*, 2 P. Wms. 204; *Todd* v. *Grove*, 33 Md. 188; *Cherbounier* v. *Evitts*, 56 Md. 276.

As to interlineations or change in deed, see *Pugh* v. *Mitchell*, 3 App. D. C. 321.

4. In case of real mental weakness a presumption arises against the validity of the transaction, and the burden of proof rests upon the party claiming the benefit of the conveyance or contract to show its perfect fairness and the capacity of the other party. 2 Pomeroy Eq. Jur. 467 and note; 1 Story's Eq. Jur., Secs. 307, 323; 8 Am. & Eng. Encyc. L. 1310; *Highberger* v. *Stiffler*, 21 Md. 338; *Allore* v. *Jewell*, 94 U. S. 506.

5. Where there is great weakness of mind in a person executing a conveyance of land, arising from age, sickness, or any other cause, though not amounting to absolute disqualification, and the consideration given for the property is grossly inadequate, a court of equity will, upon proper and reasonable application of the injured party or her representatives or heirs, interfere and set the conveyance aside. *Allore* v. *Jewell*, 94 U. S. 506; *Griffith* v. *Godey*, 113 U. S. 891; *Boyce* v. *Grundy*, 3 Pet. 210; *Conley* v. *Nailor*, 118 U. S. 127.

6. The fact that the grantee in a deed of a person of unsound mind did not know the grantor to be *non compos* at the time of the execution of the deed gives it no validity; such deed is void. The question of good faith or notice on the part of the grantee has no place in such cases. Such deed is void and can not be ratified by acts *in pais*. *Sullivan* v. *Flynn*, 9 Mack. 396; *Dexter* v. *Hall*, 15 Wall. 9; *Edwards* v. *Davenport*, 20 Fed. R. 756. Restoration of purchase money not necessary: *Hovey* v. *Hobson*, 53 Me. 453; *Flanders* v. *Davis*, 19 N. H. 139; *Gibson* v. *Soper*, 6 Gray, 279; *Breckinridge* v. *Ormsby*, 1 J. J. Marshall, 245; *Remicker* v. *Smith*, 2 Har. & J. 421.

*Mr. W. L. Cole* and *Messrs. Cook & Sutherland* for the appellees:

1. The inquiry is limited and confined to the condition of

Mrs. Moran when the deeds were executed.    The text books and cases are plain on this point.    See Devlin on Deeds, Secs. 68, 69, 70, 73, 74; Schouler on Wills, Sec. 186; *Harrison* v. *Rowan,* 3 Wash. 584.

2. While the evidence is full and complete as to the mental condition of Mrs. Moran at the date of the execution of the deeds it is to be remembered that the presumption of sanity prevails until overcome.    *Odem* v. *Riddick,* 104 N. C. 515.    And the burden of proving insanity is upon the party who alleges it.    *Rickett* v. *Joliff,* 62 Miss. 440; *Turner* v. *Rusk,* 53 Md. 65; *Matter of Collins,* 3 C. E. Green (N. J. Eq. 253); *Owen's Case,* 1 Bland, 370.

As bearing upon the question of undue influence, the following authorities are cited: *Rutherford* v. *Morris,* 77 Ill. 397; *Conley* v. *Nailor,* 118 U. S. 127; *Marmon* v. *Marmon,* 47 Iowa, 121; *Shailer* v. *Bumpstead,* 99 Mass. 112; *Mackall* v. *Mackall,* 135 U. S. 167, 171.    Besides these authorities on undue influence, see the following on the question of weakness of mind.    *Summers* v. *Pumphrey,* 24 Ind. 231; *Young* v. *Stevens,* 48 N. H. 133; *Van Meter* v. *Darrah,* 115 Mo. 153.

3. The distinction between the contract of a person *non compos mentis* and a person of weak intellect merely, is recognized by all text writers and in many decided cases; and it may be stated as the concensus of opinion that weakness of mind alone is not sufficient to avoid a deed or contract. *Owen's Case,* 1 Bland Ch. 373; *Allore* v. *Jewell,* 94 U. S. 511; *Harding* v. *Handy,* 11 Wheat. 125; 2 Pomeroy's Eq. Jur. 947; 1 Devlin on Deeds, Sec. 68.

It seems to be equally well established that a contract made in good faith and for a full consideration, without notice of the mental incapacity of the grantor, will not be avoided except upon the terms of restoration of the consideration given for the conveyance.    2 Pomeroy's Eq. Jur., Secs. 946, 947; 1 Story's Eq. Jur., Secs. 227 and 228; 2 Kent's Com. 450, 451; 1 Devlin on Deeds, Sec. 69; *Long* v. *Long,* 9 Md. 348; *Day* v. *Seely,* 17 Vt. 542;

*Behrends* v. *McKenzie,* 23 Iowa, 333; *Wilder* v. *Wheatley,* 34 Ind. 181.

This last case is quoted with approval in *Fay* v. *Burditt,* 84 Ind. 433, and a long list of authorities, English and American, are cited in support of the proposition stated. To the foregoing may be added the following: *McCormack* v. *Littler,* 85 Ill. 62; *Rigan* v. *Green,* 80 N. C. 236; *Insurance Co.* v. *Hunt,* 79 N. Y. 541; *Davren* v. *White,* 42 N. J. Eq. 569; *Lincoln* v. *Buckmaster,* 32 Vt. 652; *Mathiessen* v. *McMahon,* 38 N. J. L. 536; *Bank* v. *Sneed,* 97 Tenn. 120.

The testimony fails to show great mental weakness in Alice Moran at the time she made the deed to Sullivan. The testimony of Drs. Magruder and Witmer was improperly admitted because their opinions were founded, not upon an examination of Alice Moran, but upon the history of her case as given by Dr. Moran, which history was no part of the record in this case. An expert may testify to mental capacity in either of three ways: (1) He may state his opinion based on personal knowledge of the person, not upon hearsay nor conflicting testimony. (2) After hearing all the testimony on the question, if it is not conflicting, he may give his opinion as to the mental condition indicated by it. (3) He may be asked what a supposed state of facts, put to him hypothetically, corresponding in detail to facts already in evidence, would indicate as to mental condition. Lawson on Expert Evidence, 144, 151, 152; *Heald* v. *Thung,* 45 Me. 396; *People* v. *Snatchez,* 22 N. Y. 147; *Woodbury* v. *Obear,* 7 Gray, 467; *Dexter* v. *Hall,* 15 Wall. 9.

4. The deed of Mrs. Moran to Sullivan vested in him the legal title for which he paid in good faith, and without notice of any incapacity on her part, or fraud practiced upon her, the sum of, at least $5,000, and if she or her heirs would deprive him of his title it should be only upon condition of restitution of the amount so paid. "Where courts of equity are called upon to administer justice upon grounds of equity against a legal title they allow a superior strength to the

legal title when the rights of parties are in conscience equal." 2 Story's Eq. Jur., Sec. 1502 *et seq.; Long* v. *Long,* 9 Md. 348.

One who buys in good faith from a fraudulent debtor and who learns of the fraud before he has paid the full price is protected to the extent of the payments made before he learned of the fraud. *Bush* v. *Collins,* 35 Kan. 535; *Sewing Machine Co.* v. *Zeigler,* 58 Ala. 221; *Lobstein* v. *Lehu,* 20 Ill. App. 254.

Mr. Justice MORRIS delivered the opinion of the Court:

1. Notwithstanding the voluminous testimony in the case, which we do not deem it necessary here to analyze, it is quite clear that the gist of this controversy lies within a very narrow compass. Whether Alice Moran, now deceased, was or was not, at the time of the alleged execution of the deeds in question, so unsound of mind as to be incapable of making a valid deed or contract, it is quite certain from the record that her mental faculties at that time were so weak and feeble as easily to subject her to any influences that might be brought to bear upon her. Twice in his testimony the appellee Daly himself admits her extreme feebleness in this regard. It is also very clear from the testimony, that Daly, an inmate of her household for twenty years and upwards, a member of her family, practically occupying the position of a son to her, practically the only member of her family residing in her house, having constant and intimate intercourse with her, evidently attending to her business when she became incapacitated from doing so herself, claiming himself to have enjoyed her trust and confidence, and to have been employed by her as her agent in one of the transactions under consideration, that with Sullivan, and claiming also to have been intended by her to become the special object of her bounty as against the enmity of the appellants, was in fact in such a position of trust and confidence towards her, that it was easy for him, in the condition

of mental impairment which is shown beyond reasonable doubt to have existed in her case, to exercise undue influence upon her.    And it is also very clear that by the deed in question, he procured a benefit to himself without any adequate consideration, if, indeed, there was any consideration whatever, which we regard as more than doubtful ; for we regard the alleged delivery to her of a roll of bills as a mere sham and pretence.    From all this it necessarily follows that the burden was upon him to show that the transaction by which he acquired title to the property in question was entirely fair and just, and that it was voluntary on the part of the grantor. This, we think, he has utterly failed to show.

The Supreme Court of the United States and this court have repeatedly held that vested rights and solemn instruments of record are not to be overthrown except upon clear and unequivocal proof of their invalidity.    But it is likewise equally well settled by repeated decisions of courts of equity in England and America, that when, at the time of any given transaction, a fiduciary or confidential relation is shown to have existed between the parties, and the opportunity for the exercise of undue influence is shown to have been present in the relation and circumstances of the parties, and the one in the superior position of being able to exercise the influence has in fact procured a benefit to himself from the other, a court of equity will not allow the benefit to stand without clear and satisfactory proof of the entire fairness of the transaction.    Pomeroy's Eq. Jur., Sec. 956; 27 Am. & Eng. Encyc. of Law, Title, Undue Influence, where the authorities on the subject are cited.

By all the authorities the burden of proof of the fairness of the transaction in such cases is placed upon the beneficiary of the transaction.    In the present case, the beneficiary, Daly, so far from proving that the transaction between him and his aged mother-in-law, Alice Moran, was fair and just, has told a most incredible story concerning it. He seems to have been a man without regular occupation,

and to have been in fact supported by his mother-in-law, or by the business which was carried on in her name. He claims to have had some resources, but the claim is supported by no proof. He states that he kept a bank account but the amount or condition of that account is not shown; and yet, although he seems to be an intelligent man and a man of business, and to have kept a bank account, he states that the sum of $2,500, which he pretends to have paid to Mrs. Alice Moran in this transaction, he had kept for years under his bed, and behind pictures, and in other nooks and corners, and latterly in the safe in the house, which, if it had any existence, for we do not otherwise hear of it in the record than by this incidental reference, must have been the safe of Alice Moran, for Daly does not claim to have owned anything in the house before the conveyance to him. And, singularly enough, Mrs. Moran does not seem, according to the testimony of Daly's witnesses, which, however, is otherwise discredited, to have kept her money in any safe.

Remarkable and unusual precautions seem to have been taken in the execution of the transaction, which need not here be specified in detail. Suffice it to say that such precautions are not ordinarily taken by honest men in their ordinary honest transactions. Honesty is not usually astute; fraud ever is.

But the most extraordinary feature of the transaction was the disposition, or failure to dispose, of the purchase money supposed to have been paid to Alice Moran. Daly, as we have stated, occupied the position of a son towards this aged woman; and he claims to have been the special object of her bounty. And yet, according to his own statement, when he paid her the $2,500, and when Sullivan paid her $5,000, and when he paid her the further sum of $2,000 on account of Sullivan's check, she being at the time unable to move from her room or to go out of the house, so as to deposit this large sum of money in a safe place, or to invest it in some good security, or otherwise to make proper arrange-

ment for its safe keeping, he did not know what she did with the money, or what became of it, and he made no inquiry whatever in regard to it; and, so far as the record shows, no part of the money has ever since been accounted for in any way. Daly says that he paid no further attention to the matter. Such conduct towards an aged and infirm woman who had been a mother to him for upwards of twenty years, and whose infirmities now demanded more or less of assistance, if not of actual guardianship, passes all comprehension. If we must believe his statement, we must regard his indifference to the welfare and the interest of this old woman as simply shocking. We prefer to regard the whole statement as making too great a demand upon human credulity, and therefore not to be accepted by us. It is remarkable, too, that, even in a matter which, after twenty years of acquaintance and intimate relationship with the family, he must have known, if any man knew, the relationship of these appellants to Alice Moran, he indulges, in his answer to the bill of revivor, in a wanton pretence of ignorance of that relationship, which is not creditable to him, and certainly does not tend to induce credit to be given to his testimony.

Without entering further into the details of the testimony, which would serve no good purpose here, we are satisfied that the testimony adduced on behalf of the appellee Daly, instead of proving that the transaction with his mother-in-law, by which he was benefited, was fair and just, tends on the contrary to prove that it was fraudulent and without justification. Consequently we must hold that the deed of conveyance to him from Alice Moran was null and void, and should be cancelled, as having been procured by undue influence upon an infirm person, whose capacity to execute the deed was, to say the least of it, extremely doubtful.

Being of this opinion, we must *reverse* the decree appealed from in the case of James P. Moran and others against James D. Daly, and remand the cause to the Supreme Court of the District of Columbia, with directions to enter a decree

therein in favor of the appellants and in accordance with the prayers of the bill of complaint in the cause.    And it is so ordered.

2. With regard to the case against Sullivan there are some considerations that do not enter into the case against Daly.    Sullivan bore no such relation of trust and confidence towards Mrs. Alice Moran as did Daly; and there is no ground in his case for the application of the theory of undue influence, unless Daly acted as his agent, which the record fails to show, or unless he knew of Mrs. Moran's enfeebled mental condition and colluded with Daly to take advantage of it.    There is some ground in the record for suspecting such collusion, but no sufficient proof.    There is greater reason to be deduced from the record that Daly was acting in his own interest without actual complicity on the part of Sullivan.    But, if at the time of the alleged execution of the deed to Sullivan, Mrs. Alice Moran was so unsound of mind as to be incapable of making a valid deed or contract, such unsoundness would necessarily invalidate the deed.    In the case against Daly it was not necessary to decide this question; and we have not there attempted to decide it.    In the present case it becomes an important element of determination.    Without indicating on which side, in our opinion, lies the preponderance of evidence, as we do not wish to prejudge the case in view of the course which we have resolved to adopt in regard to it, but regarding the testimony in the record as it now stands as an insufficient, or at least unsatisfactory, basis for a decision, we think the case is one wherein the verdict of a jury upon issues properly formulated and sent to a court of common law for trial, might well be taken for the information and guidance of the court of equity.    See *Stewart* v. *Iglehart*, 7 G. & J. 132; Alexander's Chancery Practice, p. 174.    In the present aspect of the case, it would seem to be a matter of right on the part of the appellants as the heirs at law to demand such issues.    They have not, it is true, made any such demand;

but a court of equity may always, in its own discretion and for its own information, direct such issues; and we think that it is proper so to do in the present case. It would seem also to be proper that the complainants, if they are so advised, should amend their bill of complaint in this case by making Daly a party to it as defendant.

Accordingly the case will be remanded to the Supreme Court of the District of Columbia, with directions to vacate its decree rendered in the cause, and to allow the complainants, if so advised, and within such time as may be right and proper, to amend their bill of complaint as hereinbefore indicated; and to allow and authorize the parties to formulate issues in the premises for trial by jury in a court of common law upon such evidence as they may be enabled to adduce before such jury; and thereupon, upon the rendition and return to the court of the verdict of the jury, to rehear the cause upon such verdict, and upon the testimony heretofore taken in the cause, and upon any other and further testimony which the court may think proper to admit; and such further proceedings shall be had in the premises as may be right and proper and according to law.

For the reasons and purposes indicated, and without otherwise passing upon its correctness, the decree appealed from will be *reversed, each party to pay his own costs in this court, and the cause will be remanded for the proceedings to be had which are here directed. And it is so ordered.*